[381] Thomas H. Duggan vs. James Cole — Appeal from Travis County.

A record which was not sent up with or certified as a part of the transcript of the cause before this court, ought not to be noticed for any purpose, in the adjudication of the cause in this court. [11 Tex. 39; 28 Tex. 263.]

When the defendant sets up the statute of limitations as a defense, the burthen of proof is on him to show that the action was barred at the time of commencing the suit.[1]

---

[1] Note by Reporters.— Does this affect the principle, that the plaintiff is bound to show in his petition, that he has a legal and subsisting right, or cause of action? See Coles v. Kelsey, decided at the present term.

A second verdict will not be set aside as being contrary to or unsupported by the evidence, after a motion for a new trial, upon that ground, has been refused in the court below, notwithstanding this court cannot perceive upon what evidence the jury found their verdict.

The transcript of the record in this case presents the following pleadings and evidence:

"JAMES COLE ⎫
       vs.      ⎬ *Travis District Court, Fall Term, '47.*
"THOS. H. DUGGAN. ⎭

"The amended petition filed by leave of the court and with the assent of all parties, and to go in this cause in the place and stead of the original petition now withdrawn. The said petitioner makes known to your honor, as before stated, that the said defendant, in the year 1839, was indebted to him justly in a large sum of money, to wit: in the sum of eleven hundred and sixty-one dollars and eighty-one cents, for money paid [382] out and advanced to the use and benefit of the said defendant, and at his special instance and request; and also for the sum of eleven hundred and sixty-one dollars and eighty-one cents, loaned money, and for work and labor, care and attention to the business of the defendant by said plaintiff, and for the expenses, care and attention of the plaintiff in bringing out the aged, infirm and penniless father of the defendant to this country at the request of said defendant, as the same will appear by the account herewith filed and prayed to be taken as a part of this petition. He prays that said defendant answer this petition, and that, on the hearing, your honor would grant him a judgment for his account, damages and costs, and he will ever pray, etc.

(Signed)                    "LEE & GILLESPIE.

"Indorsed," Filed 7th October, 1847.

"B. D. BASSFORD, Clerk."

To this petition was appended as an exhibit an account dated "1839, May," for groceries and other merchandise and for cash loaned, etc., amounting to $1,161.81.

The defendant at the fall term, 1857, of the court pleaded in answer to this petition as follows, first a denial, second in set-off, as follows: "And for farther answer said defendant says

that said plaintiff is indebted to him in the sum of eleven hundred and sixty-one dollars for money advanced by him to said plaintiff, and for money received by said plaintiff for his, said defendant's, use, and for divers goods, wares and merchandise purchased for said defendant by said plaintiff and not delivered to said defendant previous to the commencement of this suit, the particulars of which are hereunto appended as a part of this answer, all of which he is ready to verify, wherefore he prays judgment against said plaintiff for said sum," etc.

"Particulars. James Cole to Thomas H. Duggan, Dr., 1839; to cash advanced you, said Cole, in Mississippi, previous [383] to your departure for New Orleans and Texas, in 1839, and not accounted for by you....................................................... $575.00

"To cash advanced you in New Orleans by E. Duggan, on my account, in 1839, and not accounted for........................... 161.00

"To cash advanced you in Texas, 1839, to purchase land which you did not purchase nor account for the money.................. 300.00

"To merchandise purchased for me and delivered to you and not accounted for by you......................................... 125.00
_____
$1,161.00

And thirdly, the statute of limitations, as follows:

" And for further answer in this behalf the said defendant saith, that if said plaintiff ever had any cause of action against this defendant the same did not accrue within four years before the filing said petition and bringing this suit, and this he is ready to verify, wherefore he prays judgment, etc.

(Signed) "WEBB, for Defendant."

At the trial the plaintiff proved by J. Cole, Jr., that in 1839 he was employed by defendant to haul up a load of goods from Houston to Bastrop county; that the goods were received from a store in Houston upon the plaintiff's order, and consisted of two hogsheads of bacon, two or three barrels of flour, one barrel of sugar, one sack of coffee, four kegs nails, a lot of castings and some boxes and trunks; the boxes and trunks were marked J. C.; that W. Terrell also hauled up a load of goods, but does not know where he got them, and that the defendant borrowed a hundred dollars from the plaintiff to pay for hauling up the goods. The plaintiff also proved by Matthew Moss that the defendant Duggan told him, witness,

that Mr. Cole had loaned him two hundred dollars to pay for a pair of match horses which he, Duggan, had with him at the time, and that Cole laid in provisions consisting of bacon, flour, sugar and coffee for one year for his, Duggan's, family, and that he did not know [384] what he would have done had it not been for his cousin James. Here the plaintiff rested his case.

The defendant then proved by Henry Terrell that he knew the plaintiff, Cole, in Mississippi in the early part of the year 1839; that he was in very bad health, and his appearance and situation led witness to believe that he was very poor; that he, Cole, was staying with Duggan; that Duggan bought clothes for Cole and gave them to him, as he believed, from motives of charity, and did not charge him for board; that Cole bought goods for Duggan in New Orleans, in 1839, but from what Cole said after his arrival on the Colorado, in June, 1838, and from witness' own knowledge of the transaction, he did not believe Duggan was indebted to Cole at the commencement of this suit; that he was acquainted with Edward Duggan, the father of the defendant; knew that he came from Mississippi to Texas with the plaintiff, Cole, in 1839, and heard both him and Cole say that he, E. Duggan, had advanced to Cole in New Orleans one hundred and sixty-one dollars on account of his son Thomas, the defendant; that he, witness, saw Thomas Duggan, the defendant, give to the plaintiff three hundred dollars in June, 1831, to purchase for him, Duggan, a tract of land in Bastrop county; that plaintiff left the house of witness with the money, promising to return in a short time and assist the defendant in removing to the land to be purchased; that plaintiff did not return at all; witness did not know whether plaintiff ever returned the money or not, but was under the impression he did not; witness hauled up part of a load of goods for Duggan; Wm. Austin hauled part of a load in the same wagon; James Cole, Jr., hauled up two casks of bacon and some other articles. A number of the goods charged were missing, more than one hundred dollars' worth, and Cole said they must have been lost in Galveston or on the way from Galveston to Houston. Witness further stated that a part of

the load hauled up by James Cole, Jr., were goods purchased by the plaintiff for the defendant in New Orleans, [**385**] and a part of the load consisted of goods purchased by the defendant in Houston; the bacon constituted the greater portion of the weight of the load.

James Pierce, a witness for the defendant, testified that in Jefferson county, Mississippi, in May, 1839, he saw the defendant hand to the plaintiff a sum of money, between five hundred and fifty and six hundred dollars, with a request that he, Cole, would lay it out for goods for him, Duggan, in New Orleans, according to a memorandum handed him with the money.

William Austin, also a witness for the defendant, testified that he knew the plaintiff in the early part of the year 1839; he was in very bad health and staying at the house of the defendant; did not positively know as to his pecuniary circumstances, but from what he saw and knew, thought them very limited. His board was given him by the defendant; heard plaintiff say that Edward Duggan advanced him money in New Orleans, but does not recollect the amount; Henry Terrell hauled up a load of goods; witness part of a load, and James Cole, Jr., part of a load, consisting principally of two hogsheads of bacon; knows that part of the goods were missing; thinks upwards of a hundred dollars worth; plaintiff stated they were lost either at Galveston or on the way to Houston. From what he, witness, heard plaintiff say, and from his own knowledge of the transaction between plaintiff and defendant, he, witness, did not believe that defendant owed plaintiff one cent at the commencement of this suit.

The plaintiff then offered as rebutting testimony a paper in the following words: "James Cole v. Thomas H. Duggan and Henry Terrell. At the district court, Travis county, fall term, 1840. Before me, B. D. Bassford, clerk of the district court of said county and republic, personally appeared Henry Terrell, one of the defendants named in the above suit, who being first duly sworn according to law, deposes and says, separately and for himself, that he cannot [**386**] answer the interrogatories which have been propounded to him and his co-

defendant, because he had no interest in the alleged transaction, and that at the time it purports to have been made, he was then a citizen of Texas, and knew nothing about it. Sworn to and subscribed before me, this the 8th day of December, 1840. B. D. Bassford, clerk district court, Travis county."

The plaintiff also introduced Peter Kerr as a witness, who testified "that he went in company with the plaintiff from Texas to Port Gibson; that he was well dressed, and appeared to have money; he staid at the house of a respectable merchant, and was considered a respectable man." Was taken as one of witnesses' securities on a bond for a large amount early in the year 1839.

James Matthews, also introduced by plaintiff, testified that he had known plaintiff since 1839 or 1840 in this country; does not know of his returning to the United States after he became acquainted with him. Terrell and Duggan, witness understood, were brothers-in-law.

The foregoing is all the evidence that was introduced on the trial of the cause. The jury found a verdict for the plaintiff for six hundred and twenty dollars and seventy-nine cents, with lawful interest thereon from May, 1839, and upon which judgment was entered for the plaintiff for the six hundred and twenty dollars and seventy-nine cents principal, and two hundred and fifty-six dollars interest, and all costs.

The defendant moved for a new trial, which being refused, he appealed.[1]

---

[1] NOTE.— The transcript of the record in a case of "James Cole v. Thomas H. Duggan and Henry Terrell," which was commenced at the fall term, 1840, of the district court of Travis county, is found with the papers in this case, but how it came into this court does not appear, nor does it appear that it was used or adverted to in the argument of the present cause in this court. It is noticed, however, because it is referred to in the opinion of the court.

The case which this transcript presents is a suit against Duggan and Terrell, by Cole, upon an open account for one thousand and forty-nine dollars and seventy-nine cents, reduced by credits, admitted by the plaintiff, to six hundred and twenty-nine dollars and seventy-nine cents. The plaintiff had a verdict and judgment for two hundred and eighty-five dollars and twenty-nine cents principal, and ninety-nine dollars and sixty cents interest, from which the defendants appealed, and the supreme court of the late republic reversed the judgment and remanded the cause.

[387] *Webb*, for appellant.
*Gillespie* and *Lee*, for appellee.

The following was pronounced by Mr. Justice LIPSCOMB as the opinion of the court:

In this case the petition shows that it was a substitute by leave of the court, and by consent of the parties, to be instead of the original petition now withdrawn, the answer to recognize it as an amended petition. There is sent up the record of a case between the same plaintiff and the same defendant, with one Terrell as a co-defendant. There was a verdict for the plaintiff, and judgment, from which an appeal was taken to the supreme court, and the mandate of the supreme court, by which it appears that the judgment was reversed and the cause remanded. From all of which we consider the conclusion a just one, that the amended petition was an amendment to the original one filed, on which the judgment had been rendered that was reversed, and the cause remanded to the district court, and that in the amended petition the name of Terrell as a co-defendant with Duggan was discontinued. To make such amendment was certainly within the power of the court to permit. It was not, therefore, a new suit, but a continuation of the old one, which appears to have been commenced in 1840; and being so commenced, the cause of action was not barred. That it was so considered by the parties on the trial in the court below is further manifested by the fact that all of the testimony was about the original transactions between the parties; and it does not appear that the question of the cause of action being barred was raised on the trial, although the statute was pleaded. If it had been an original [388] action, only then commenced, the defendant in the court below had only to ask the charge of the court on the statute to have entitled him to a verdict; but no charge was prayed. That the petition was carelessly framed there can be no doubt. It ought certainly to have referred to the former in special terms, and kept up the connection between the amended and the original one. It seems, however, to have been by consent; and where careless pleading seems to have

been by consent, to visit one of the parties with the conse-
quences of such faults would scarcely be equal justice.

There was a great deal of testimony on both sides, and from
the lapse of time it was nothing more than might have been
expected, that there should be some apparent contradiction.
If the witnesses did not directly contradict each other, they cer-
tainly swore to facts from which very opposite conclusions might
justly have been drawn. That must necessarily have made it
the duty of the jury to weigh the circumstances and determine
as best they could on the rights of the parties. Whether their
determination was the result of a want of faith in a part of
the testimony or reconciling it with honesty of intention, but
concluding that some of the witnesses were mistaken, their
verdict is conclusive between the parties, because a revising
court could neither say the verdict was without testimony, or
that it was contrary to evidence. The judgment must be
affirmed.

After the foregoing judgment was pronounced, the appellant, by his counsel,
applied for a rehearing of the cause, and under a rule of the court presented
the following petition for that purpose:

*To the Honorable the Judges of the Supreme Court:*

The petition of Thomas H. Duggan respectfully asks for a
rehearing in the case of Duggan v. Cole, lately decided by your
honorable court, for the following reasons:

1st. The claim of the plaintiff as presented by the transcript
of the proceedings of the court below, and upon which *alone*
[389] your honors had to act, was clearly and unquestionably
barred by the statute of limitations. The petition was filed in
1847, to recover the amount of an account which was shown
to have been made in 1839, and there is nothing alleged or
shown in the petition or elsewhere in the record which takes
the claim out of the operation of the statute. The assertion
that it was an amended petition gave to this court no informa-
tion that the original petition was not equally barred by the
statute. Besides, whatever might have been the effect of the
original petition, it was not before the court; the plaintiff him-
self had withdrawn it from the cause, as he shows upon the
face of the petition which he substituted in place of it; this

court, therefore, it is most respectfully submitted, ought not to have adverted to it for any purpose whatever in rendering its judgment in the present case. The only possible mode by which that petition could have been invoked into this case would have been to have used it as *evidence* on the trial in the court below. It was not so used, and therefore was not before that court, and could not have been before this by any rule of law or practice.

The court, in the opinion delivered in this case, for the purpose of showing that the plaintiff's demand was not barred by the statute of limitations, uses the following language: "We find, however, from a former record of a suit between the same parties, commenced in 1840, that a judgment had been rendered, which, on an appeal to the supreme court of the republic, was reversed and the cause remanded; and that on its reappearance in the district court the parties, from some cause or other, agreed to the substitution of a new petition and went to trial. The suit, then, is only one and the same that was commenced in 1840, and consequently the act of limitation cannot bar it."

The record of the suit commenced in 1840, it is again most respectively submitted, was not before this court, and it could not properly be referred to for any purpose in the decision of this cause. Your petitioner again insists that the only [**390**] way in which it could have been brought into this cause would have been by offering it as evidence at the trial in the court below, and as it was not so offered or used in that court, it could not by any legal rule be referred to by the supreme court in its revision of the proceedings of the district court. For this court to resort to evidence not found in the record submitted to its consideration, and which was not used on the trial in the court below, and upon that new and distinct evidence which the parties have had no opportunity to controvert or explain, to make its judgment and decision here, it is most respectfully submitted, would be setting a precedent which would be dangerous to, if not wholly subversive of, the rights of parties.

The opinions of the supreme court of the republic may be regarded as law in this court, but the mere *matters of fact*

which are stated in the proceedings, had in another court, cannot be regarded in this, unless properly incorporated as testimony in some cause brought before this court upon appeal or by writ of error, and the record referred to in this case, and upon which a most important branch of the cause was made to turn, did not come before it in that attitude.

Inasmuch, then, as the record of the suit commenced in 1840 was not before this court either as evidence used in the court below, or in any other form known to the practice of the court or the rules of law; and inasmuch as by the opinion of the court delivered in the cause, it is shown that the plaintiff's action would have been barred by the statute of limitations had the court not relieved it from the operation of the statute by resorting to that record, and to which the plaintiff himself did not resort on the trial in the court below; and inasmuch as the case had been decided in this court upon testimony which the counsel for the appellant had no opportunity of controverting or even of discussing before this court, it is most respectfully submitted by your petitioner, that he should have a rehearing for that reason if for none other, [**391**] though he humbly submits he will be able to show other good and substantial reasons for granting his prayer.

Your petitioner most respectfully submits to your honors, that the court must have misapprehended the record in the suit commenced in 1840, when it regarded it as a suit between the same parties, and for the same consideration and cause of action; and that this suit was only a continuance of that suit. By adverting to that record it will be seen that the two suits were between different parties and for a different cause of action. That suit was between James C. Cole, plaintiff, and Thomas H. Duggan and Henry Terrell, defendants. This suit is between James Cole and Thomas H. Duggan. That suit was for the recovery of six hundred and twenty-nine dollars and seventy-nine cents. This is for the recovery of eleven hundred and sixty-one dollars and eighty-one cents. The gross amount of the account sued upon in the former case, without the credits which the plaintiff himself had allowed, was one thousand and forty-nine dollars and seventy-nine cents, more

than one hundred and twelve dollars less than is demanded in this case; and many of the items in the account then sued for were of a different character from any that are embraced in the present account.

In referring to the many points of difference between the two cases, both as to the parties and the cause of action, your petitioner does not do it for the purpose of asserting that both cases had not their origin in the same alleged transaction; that is a matter, it is most respectfully submitted, with which this court, as the case is now presented, can have nothing to do. They are referred to for the purpose of showing that the two cases are not so identical as to authorize a reference to the one in this court to sustain the other. If the record of the former case had been offered as evidence in the court below on the trial of this, the differences between the two might possibly have been explained by other testimony, but without such explanation it is impossible to say that the two cases are identical; and therefore the first [**392**] one could not be resorted to to sustain the last, even had there been no objection to a practice being established in this court of resorting to testimony *aliunde* to sustain a cause before it.

It is further most respectfully submitted to your honors, that if the record in the former suit between Cole v. Duggan and Terrell could have been invoked into this cause at all in this court, not having been brought into the cause in the court below, then it should have been considered throughout, and the defendant should have had the benefit of everything it contains. In that suit the plaintiff called upon the defendants to answer interrogatories; they did answer them, and by their answer showed that the plaintiff was not entitled to recover one cent. Their answers were not disproved by a single witness on the trial of either suit, and therefore ought to be taken as true; and they were clearly sustained by the testimony of most of the witnesses who were sworn on the trial of the last suit. The facts sworn to by the plaintiff's witnesses were all admitted in the answers, and other facts directly responsive to the interrogatories propounded showed that there was nothing due to the plaintiff. It is therefore most respectfully asked if

the record of the former suit could be resorted to at all in this case, ought not the whole record to have been used? Is it right and just to resort to it to sustain the plaintiff's action, and not resort at the same time to such parts of it as sustained the defense, and showed that the plaintiff had no right to recover?

In the former suit there was a verdict for the plaintiff for two hundred and eighty-five dollars. The supreme court of the republic set aside that verdict, because it was contrary to evidence, and granted a new trial. In this case, upon testimony not a particle stronger for the plaintiff, but much stronger on the part of the defendant, the jury found a verdict for six hundred and twenty dollars, and the supreme court affirm the judgment.

It is stated in the opinion of this honorable court that [393] "there appears to have been a *great deal* of conflicting evidence before the jury at the trial." It is believed, and most respectfully submitted to your honors, that from the vast and complicated amount of business and interests which have been pressed upon the consideration of the court during the last few weeks, and the immense labor it has had to perform, that it has not been able to give such a careful examination of the facts which the record discloses as would, under more favorable circumstances, have been given; and that, therefore, the court has, to some extent at least, misconceived the testimony in the cause.

It is not perceived from a careful examination of the evidence found in the record that there is the slightest conflict in the testimony of any of the witnesses respecting the material facts in the case.

A review of the whole evidence shows it to be as follows: Pierce swore that he saw Duggan hand to Cole in Mississippi, before his departure for Texas, between five hundred and fifty and six hundred dollars, to be laid out for supplies for him in New Orleans. No other witness speaks of this fact in any way or manner whatsoever, nor is Pierce in any respect contradicted by any other witness. So far as his testimony is concerned, therefore, there is no conflict.

Terrell swore that he heard Cole acknowledge, after his arrival in Texas, that E. Duggan advanced to him for T. H. Duggan in New Orleans, one hundred and sixty-one dollars. Austin corroborates this testimony, and there is not a single witness that controverts or denies it, nor is there any other that speaks of this transaction. There is, then, no conflicting testimony as to this part of the evidence.

Terrell also swore that he saw Thomas H. Duggan advance to Cole, at his house in Texas, three hundred dollars to buy him some land in the up country, and that Cole did not buy the land or return with the money. This is not denied or controverted by any other witness, nor does any [**394**] other speak of the transaction, and consequently there is no conflict in this portion of the testimony.

James Cole, Jr., swore that he hauled up goods from Houston for Duggan which he obtained from a store upon an order from the plaintiff. There is not a single witness that controverts this fact, or that denies that James Cole, Jr., hauled up the very articles which he himself designates; and upon looking at the account filed by the plaintiff, it is found that the cost of these very articles was only two hundred and sixty-one dollars and twenty-five cents. No witness contradicts or denies this. James Cole, Jr., also testified that his uncle advanced one hundred dollars to Duggan at Mrs. Magee's to pay for the hauling of the goods. This fact is not denied or attempted to be disproved; there is, therefore, no conflict between the testimony of James Cole, Jr., and the other witnesses.

Matthew Moss swore that Duggan acknowledged in his presence that Cole loaned him two hundred dollars to buy a pair of matched horses. No witness contradicts this. The only objection to it is, there is no item in the account sued on to which it appears to relate; but let this be as it may, it shows no conflict in the testimony of the witnesses. Moss also testified that he heard Duggan say that Cole purchased for him a year's supply of groceries in New Orleans, and he names the articles. This is not denied by any witness. On

the contrary, all the witnesses who speak of the transaction admit that Cole did purchase such articles, and the testimony of James Cole, Jr., shows that he hauled up precisely such. There is, then, no witness conflicting with Moss.

If any portion of the testimony can be regarded as conflicting in the slightest degree, it is only that which relates to the condition and circumstances of Cole in Mississippi previous to his coming to Texas. Two of the witnesses speak of his being in indigent circumstances when he lived with Duggan, and another witness, Kerr, says he saw him in Mississippi, and he was then boarding at a respectable house [395] at a different town, and appeared to have money, and was taken as one of the sureties on his bond. The testimony of these witnesses evidently relates to different periods of time, and therefore is not in conflict; both may stand and be true. But even if in conflict, it does not affect the matters in controversy between the parties.

According to the testimony, there is nothing proved to establish Cole's account beyond five hundred and sixty-one dollars and twenty-one cents, and this, too, including the two hundred dollars proved by Moss. Pierce's testimony alone shows that Duggan advanced to Cole between five hundred and fifty and six hundred dollars; so that if the testimony of Terrell and Austin, as to the other advances by Duggan, amounting to four hundred and sixty-one dollars, be discarded, there is still no evidence to sustain the verdict; but, on the contrary, it is shown that the verdict is directly contrary to the evidence.

The petitioner humbly hopes that your honors will give a more thorough examination into this case, convinced that if you will do so, you will discover great injustice has been done him, and will grant him a rehearing and new trial. If a new trial be granted him, he is confident that he will be able to show, as he thinks he has already done, that he does not owe the plaintiff one cent; and he trusts on a future occasion that he will be able to present his case to jurors less prejudiced against him, and less predisposed in favor of his adversary

than those evidently were who have heretofore acted on his case, and that justice may yet be meted out to him.

THOMAS H. DUGGAN,

BY JAMES WEBB,

His Attorney.

Upon the application for a rehearing, Mr. Justice WHEELER delivered the following as the opinion of the court:

Did I entertain the opinion that the petition must upon its face show that the right of action was not barred at the time [396] of instituting the suit, I should be unable to concur in the judgment of the court in this case. But being of a different opinion, I can see no sufficient reason for reversing the judgment and remanding the cause.

I do not think that we are authorized to notice, for any purpose whatever, any record not embraced and certified with the transcript. From the transcript before us, it does not appear whether the plaintiff's right of action was or was not barred when this suit was commenced. It only appears that the present is the continuation of a former suit; or, at least, that the date of the filing of this petition was not the commencement of this suit, but subsequent thereto. Regarding, as I do, the defense afforded by the statute of limitations as a defense which it is incumbent on the defendant to make out by averment and proof, when not otherwise apparent, I am constrained to conclude that it cannot avail him in the present instance. The defendant pleaded the statute; the *onus probandi* rested on him. It was incumbent on him, and not on the plaintiff, to show when the suit was commenced, and that it was, in truth, after the statute had interposed an effectual bar to the plaintiff's right of action. Upon this point the argument for a rehearing seems to me to proceed upon an erroneous supposition as to the party upon whom rested the burthen of proof. If in the record of the former proceeding in this case there was anything favorable to the defendant below, he was at liberty to have availed himself of it, and certainly it was incumbent on him to make out his defense before the court and jury.

But it insisted that the plaintiff did not make out his cause by evidence legal and sufficient to support the verdict. I confess my inability very clearly to see upon what evidence the jury did arrive at the exact result which constitutes their verdict. But I cannot undertake to say that they found without or against evidence. I can only say that, to my mind, the evidence is unsatisfactory. Since, however, it has been sufficient to satisfy two juries, and especially [**397**] since the judge who presided at the trial with means of forming a correct judgment, very superior to those which we possess, was satisfied with the verdict, I cannot undertake to disturb it.

But the judgment heretofore rendered in this case should not have been an affirmance of the former judgment; since that judgment included interest, and was in so far erroneous. There having been no *remittitur*, or offer to remit, as appears of record in the court below, but a *remittitur* having now been first entered in this court, the judgment ought to be reversed, and such judgment now here rendered as the court below ought to have rendered.

Judgment accordingly.